Filed 9/1/20  P. v. Olobayo-Aisony CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B300620 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA142640) |
| v. | |
| ADEKUNLE OLOBAYO-AISONY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Yvonne T. Sanchez, Judge.  Affirmed.

Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Brenan and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

A jury convicted defendant and appellant Adekunle Olobayo-Aisony of false imprisonment by violence (Pen. Code, § 236; count 2)[1] and dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1); count 4).[2] (*People v. Olobayo-Aisony*, *supra*, B284951, at p. 2.) After waiving his right to trial on the prior conviction allegations, defendant admitted a prior serious felony, a 2002 forcible rape (§ 261), for purposes of section 667, subdivision (a)(1), and the "Three Strikes" Law. The trial court imposed the two-year middle term for count 4, doubled pursuant to the Three Strikes law, plus five years for the prior serious felony conviction, and stayed the sentence on count 2 (§ 654). (*People v. Olobayo-Aisony*, *supra*, B284951, at p. 2.) Defendant appealed his judgment of conviction, and we affirmed. (*Id.* at p. 3.)

Defendant filed a petition for review in the California Supreme Court. On December 12, 2018, the Supreme Court granted defendant's petition for review and transferred the matter back to us "with directions to vacate [our] decision and reconsider the cause in light of Senate Bill No. 1393 (Stats. 2018, ch. 1013)." (*People v. Olobayo-Aisony* (Dec. 12, 2018, S251474).)

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    Defendant had also been charged with criminal threats, misdemeanor battery, assault with intent to commit a felony, and attempted forcible rape. The People dismissed the misdemeanor battery count before the case was submitted to the jury, and the jury acquitted defendant of the remaining counts. (*People v. Olobayo-Aisony* (Jan. 29, 2019, B284951) [nonpub. opn.], p. 2, fn. 2.)

In accordance with the Supreme Court's directive, on January 29, 2019, we vacated our original opinion and issued a new opinion, affirming the judgment of conviction, but remanding the matter to the trial court for resentencing, to give the trial court an opportunity to exercise its discretion to strike the enhancement imposed pursuant to section 667, subdivision (a)(1). (*People v. Olobayo-Aisony*, *supra*, B284951, at p. 3.)

On June 7, 2019, defendant moved to strike the five-year enhancement for the prior serious felony. The trial court denied defendant's motion and imposed the five-year prior serious felony enhancement.

Defendant timely appealed. He argues that the trial court abused its discretion by failing to strike the section 667, subdivision (a), enhancement.

We affirm.

## FACTUAL BACKGROUND

"*Prosecution's Case*

"A. <u>Prior uncharged act involving Tiana W. (Tiana)</u>

"On Tiana's 18th birthday in May 2002, she met with defendant, who she had recently met either on the bus or coming home from the bus. After he told her that he wanted to give her a birthday gift, she agreed to meet him later that day. That evening, she and defendant spent time together. They went underneath a bridge in a middle school to hang out.

"Defendant began making sexual advances, which Tiana rebuked. Despite her reaction, defendant continued. He told her that no one would hear her if she screamed because they were in a secluded area. Defendant attempted to have sex with her. As he tried to pull her clothes down, Tiana pulled them back up. She 'clench[ed]' her legs. After being unable to have sex with her

from a standing position, defendant forced Tiana to the ground and had sex with her. At this point, Tiana had 'shut down.' When defendant finished, he told Tiana not to tell anyone. He promised to give her money. Tiana, however, told her aunt and cousin about the assault when she arrived home. Her cousin called the police.[3]

"B. Prior uncharged act involving Ashlee B. (Ashlee)

"In 2002, Ashlee was a student at the University of Southern California. She worked in the student affairs office. One day, defendant saw Ashlee walking to work and approached her. He said that he was on his way to the track office on campus. He asked Ashlee to meet him later that day. After meeting again on campus, defendant suggested that they do something off campus. Defendant told her that he would give her money or buy her things. Although she had some 'reservations' about meeting with him, Ashlee agreed to go shopping with defendant off campus. At some point while shopping, defendant asked if she would rather have money or clothes; she said that she wanted money.

"Ashlee then drove defendant to a corner where he claimed that there was an ATM. She did not see the machine. Defendant got out of the vehicle and returned very quickly. The two then went to a Starbucks. At some point, Ashlee decided that she needed to take defendant home. While driving, he told her to pull the car over near a Laundromat. There were no cars in the parking lot adjacent to the Laundromat. Ashlee parked under a street light.

---

[3]    Defendant was later charged with and convicted of raping Tiana. This evidence was admitted pursuant to Evidence Code section 1108.

4

"Ashlee asked defendant if his friend was going to pick him up. Defendant then touched her leg and leaned towards her. She told defendant to back up, and he did. Ashlee made a comment about feeling uncomfortable because the street light above the car was flickering. Defendant asked her to move the car to a different spot, and she did. This spot was darker than the first.

"When Ashlee turned the car off, defendant immediately grabbed the keys. Although she was nervous, she said, "'Oh stop. You're being silly . . . . Stop playing around.' She wanted to run away, but she did not because she believed that defendant would catch her since he was on the track team. Defendant asked Ashlee if she knew what "'wasting someone"' meant. She understood it to sound like violence, and she was afraid. He then told her, "'you're not going anywhere tonight.'" Unable to think of anything to do to get out of the situation, Ashlee prayed. Defendant told her that nobody was in the area to hear her scream or help her if she ran. Suddenly, police arrived with their lights flashing. Ashlee grabbed the keys and asked the police for help.[4]

"C. <u>Charged act involving Kenyatta T. (Kenyatta)</u>

"Kenyatta began dating defendant in July 2016,[5] but the two had a falling out when he missed her birthday in early August. They agreed to go separate ways.

---

[4]     This evidence was admitted under Evidence Code section 1108. Defendant was not convicted for the incident with Ashlee. However, he was convicted of assault with intent to commit rape of an unknown victim in that same trial.

[5]     Unless otherwise noted, all dates refer to 2016.

"Despite the falling out, Kenyatta and defendant exchanged text messages until August 21, the date of the incident. Although she generally ignored defendant's phone calls, on August 20, Kenyatta answered a call and agreed to meet defendant at a restaurant the following day. They had not seen each other since July 29. Defendant said that he wanted to give her a birthday present. Because defendant lived out of town, Kenyatta told him that if he wanted to see her, he needed a hotel room because he was not invited to her house.

"Shortly after arriving at the restaurant, Kenyatta and defendant began to argue. Kenyatta said, 'I'm done,' and they both left the restaurant. After leaving defendant told Kenyatta that he wanted to give her the present. She told him to put it in her car, but he said that it was at his hotel. She agreed to go to the hotel to receive the gift.

"Kenyatta met defendant at the hotel room. At some point, he pulled a dress and a bracelet out of a bag for her. She thanked him. He then pulled lubricant, a sex toy, and condoms from the bag. Kenyatta told defendant that she had to leave. She grabbed her purse and shoes as she was leaving but not the gifts. Defendant ran in front of the door, which was the only way out of the room. He latched the door.

"Initially, defendant told Kenyatta to sit down, calm down, and stop screaming. Then, Kenyatta tried to move him out of the way. He grabbed her hand and throat and pushed her against the wall. She screamed 'at the top of [her] lungs.' Defendant told her to shut up, grabbed her shoulder, and pushed her into a chair by the door. He remained in front of the door.

"Kenyatta asked defendant what he intended to do. He replied, 'I want my money's worth.' After Kenyatta asked what

6

he meant by that, defendant explained that he paid for the room. She offered him $100, but defendant declined the money. He told Kenyatta that she was not leaving until they had sex. Kenyatta told him that she was not going to have sex with him. She then asked if defendant intended to rape her, and he replied, 'If I have to.'

"They remained in the same positions—defendant by the door and Kenyatta in the chair by the door—for about four hours. Some of that time was spent in silence, while at other times, defendant called Kenyatta names. Kenyatta tried to leave four different times, but she could not. The fourth time, defendant threatened to hurt her if she continued trying to push him. Kenyatta threatened to call 9-1-1. Defendant told her to 'go ahead,' but when she got up to use the phone, he grabbed it and threw it on the ground.

"At some point, Kenyatta was able to text message her friend, Kristen Price (Price). One of the messages said, '"Help me,"' and included a partial address of the hotel. Price found these text messages to be 'a bit alarming.' She drove to the location of the partial address, calling police on the way, and met police at the hotel. From the lobby, Price continued texting Kenyatta. At around 7:00 p.m., police arrived at the hotel room door. Shortly thereafter, Kenyatta and defendant came out.
"*Defense case*

"Defendant testified on his own behalf. He met Kenyatta at a casino on July 16. At the time, he was on parole for his conviction for raping Tiana. Kenyatta became upset with defendant after he missed her birthday. Still, he saw Kenyatta several times between July 29 and August 21.

7

"On August 20, Kenyatta asked defendant to get a hotel room for her birthday. On August 21, they met at Lucille's Restaurant for lunch. During lunch, Kenyatta again asked defendant to get a hotel room, so defendant searched for one on his phone. After booking the hotel, they drove to it separately. Defendant arrived 15 minutes before Kenyatta and checked in. When Kenyatta arrived, defendant gave her a room key and told her that he would be right back. He went to his car to get the gift, which was in a bag. When Kenyatta saw the bag, but before she saw what was inside it, she became excited and the two had sex.

"Sometime after finishing, the two began getting intimate again. Defendant took a sex toy and lubricant out of the bag. He also showed her a dress and bracelet that he bought for her. Kenyatta, appearing happy, told defendant that he must be 'ready for fun' and began using the items. Suddenly, Kenyatta received a phone call from another man. After the call, she told defendant that she had to leave. As she was leaving, she asked about money that he had promised her.[6] At this point, Kenyatta did not have the gift bag with her. Defendant told her that he would give her money some other time. Kenyatta responded, 'You think I just did all this for you for nothing?' Defendant believed that she was referring to sex. He asked her if she was a prostitute, which angered her.

"Kenyatta turned back into the room and grabbed the gift bag, which also contained some of defendant's belongings. When defendant asked her why she was taking some of his things,

---

[6] Defendant had told Kenyatta about money that he had recently won from the casino, and he offered to give her some of the winnings to pay for a tune-up for her car.

8

Kenyatta responded, 'I will show you what prostitutes do.' Defendant jumped between her and the door. Kenyatta tried to physically move him and scratch him, but he maintained his position in front of the door. At one point, defendant pushed her away, but he did not choke her. He told Kenyatta that she could leave if she left his stuff.

"Kenyatta sat in a chair looking at defendant. The two were silent. After some time, they began to argue. Eventually, police arrived. Kenyatta dropped the bag.

"Los Angeles County Sheriff's Deputy Pasquale Mastantuono responded to the incident. He interviewed Kenyatta at the hotel. At that time, she did not say that defendant told her that he would rape her if she refused to have sex with him. Deputy Mastantuono did not see any injuries on Kenyatta and she did not complain of pain. However, she did appear to be in shock. Kenyatta said that defendant had asked her for sex, and when she tried to leave, he blocked her path and put his hand on her throat.

"Leneva Cobb, defendant's ex-girlfriend and cohabitant at the time of the incident, retrieved a bag from the police station after defendant's arrest. She gave the bag to a private investigator, who inventoried it. The bag contained defendant's wallet, identification, men's and women's clothing, an A-N-G-L-E bag, receipts, spilled lubricant, a book titled 'Dating for Dummies,' two bottles of cologne, a silver sex toy, an empty bottle of lubricant, a golden-colored bracelet, a work badge, an empty condom wrapper, and a receipt from Lucille's Restaurant.

"*Rebuttal*

"Deputy Mastantuono also interviewed defendant in the hotel hallway. Defendant told Deputy Mastantuono that when

he and Kenyatta first went into the room, they kissed and took off their clothes. At that point, defendant went to give her a birthday gift, but she demanded money. Defendant refused to give her money, which upset her. Kenyatta got dressed and was going to leave, but defendant blocked the doorway because he did not want their relationship to end. Defendant did not mention that they had had consensual sex earlier in the day; he also did not say anything about Kenyatta taking his belongings or assaulting him." (*People v. Olobayo-Aisony*, *supra*, B284951, at pp. 3–10.)

## DISCUSSION

Defendant argues that the trial court abused its discretion by denying his motion to dismiss a five-year prior serious felony enhancement under sections 667, subdivision (a), and 1385.

### I. *Procedural Background*

Defendant admitted a prior 2002 conviction for the forcible rape of Tiana, which forms the basis of the prior serious felony enhancement.

In his motion, defendant asked that the trial court dismiss this enhancement in the interest of justice, based upon factors such as his ability to maintain employment after his 2012 release to parole and his participation in prison education programs and desire to resume gainful employment.

The People opposed defendant's motion, noting the seriousness of defendant's crime against Kenyatta and the striking similarities to bore to his prior crimes against Tiana and Ashlee. The People also pointed out that defendant had committed the crime against Kenyatta while on parole for his crimes against Tiana and Ashlee.

10

After entertaining oral argument, the trial court denied defendant's motion, explaining: "[H]e was reconvicted of the same charge he had just been released from prison on which is the [section] 236. [¶] I do feel it's appropriate to impose the five-year prior. The motion to strike the five-year prior is denied."

II. *Relevant Law*

In general, section 1385 has long permitted courts to dismiss a sentencing enhancement in a criminal case "in furtherance of justice." (§ 1385; *People v. Fuentes* (2016) 1 Cal.5th 218, 224–225.) Before 2019, prior serious felony enhancements under section 667, subdivision (a), were not subject to dismissal and were mandatory when proved. But Senate Bill No. 1393, effective January 1, 2019, amended sections 667, subdivision (a), and 1385, subdivision (b), "to allow a court to exercise its discretion to strike or dismiss a prior serous felony conviction for sentencing purposes." (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971.)

As the parties agree, we review a trial court's decision not to dismiss an enhancement for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 371 (*Carmony*).) Under this standard, the defendant bears the burden of showing that the trial court's sentencing decision was irrational and arbitrary. (*Id.* at p. 376.) We are not free to substitute our judgment for that of the trial court (*id.* at p. 377) or to assign a different weight to the various factors informing a discretionary decision (*People v. Willover* (2016) 248 Cal.App.4th 302, 323). "Where, as here, a discretionary power is inherently or by express statute vested in the trial judge, his or her exercise of that wide discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently

11

absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

In determining whether the trial court abused its discretion, we are guided by case law interpreting the Three Strikes law. We consider whether the trial court evaluated the nature and circumstances of the defendant's felonies (present and prior) and the particulars of his background and character. (See, e.g., *People v. Williams* (1998) 17 Cal.4th 148, 161.)

III. *Analysis*

Applying these legal principles, we readily conclude that the trial court acted well within its discretion when it denied defendant's motion to dismiss the five-year enhancement. Defendant's crime against Kenyatta was serious. And, his criminal history revealed that his conduct with Kenyatta was part of a disturbing pattern. In 2002, with the promise of a birthday gift, defendant lured Tiana to an isolated spot under a bridge and raped her. Also in 2002, with the promise of money, he lured Ashlee to an isolated parking lot; when she refused his sexual advances, he threatened her. Defendant was on parole for these crimes when he committed the violent crime against Kenyatta.

Given the seriousness of his conduct with Kenyatta and defendant's recidivist behavior, the trial court's decision not to strike the prior serious felony enhancement was not "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra*, 33 Cal.4th at p. 377; see also *People v. Taylor* (2020) 43 Cal.App.5th 1102, 1113.)

Urging us to reverse, defendant speculates that the sentencing judge, who was not the original trial judge, was unfamiliar with the case and record. The appellate record shows

otherwise. The sentencing judge reviewed defendant's motion, which included the original sentencing memorandum, the People's opposition, and heard oral argument. There is no reason to presume that the sentencing judge was too unfamiliar to exercise appropriate discretion and then rule on defendant's motion. It follows that his attempt to characterize his crime as mere "misguided attempts to calm Kenyatta down, to prevent her leaving in anger, and to repair their relationship" is not well-taken.

In addition, defendant asserts that his conviction for violating section 136.1, subdivision (b), was not "sufficiently 'serious' to warrant imposition of the five[-]year sentence enhancement." Because defendant neglected to raise this claim below, it is forfeited on appeal. (*People v. Wall* (2017) 3 Cal.5th 1048, 1075.) Regardless, we previously rejected this claim. (*People v. Olobayo-Aisony*, *supra*, B284951, at p. 19 [noting that all felony violations of section 136.1 are serious felonies and rejecting defendant's assertion that his conviction was not a serious felony].)

Defendant further argues that because the jury acquitted him of criminal threats, assault, and attempted forcible rape, there is insufficient evidence that he used force when he falsely imprisoned Kenyatta. We rejected this claim in defendant's prior appeal. (*People v. Olobayo-Aisony*, *supra*, B284951, at p. 22 [holding that defendant used a violent level of force to support the jury's finding of felony false imprisonment].)

Finally, defendant contends that public policy supports reversal. He claims that imposition of the five-year enhancement here contravenes the rationale behind the rule set forth in *In re Estrada* (1965) 63 Cal.2d 740, 748: "[W]here the amendatory

13

statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." Aside from the fact that defendant failed to raise this argument below, thereby forfeiting it on appeal (*People v. Wall*, *supra*, 3 Cal.5th at p. 1075), this argument fails on the merits. The purpose of the five-year sentencing enhancement is "to deter habitual criminal activity and to provide retributive punishment of persons who repeatedly break the law by significantly enhancing their sentences for subsequent convictions." (*People v. Lassiter* (1988) 202 Cal.App.3d 352, 356.) In light of defendant's violent crime against Kenyatta and the facts that (1) he used a similar method in his prior conviction, and (2) was on parole at the time he committed the crime against Kenyatta, the trial court did not abuse its discretion by declining defendant's motion to strike the five-year enhancement.

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
LUI

_____, J.
HOFFSTADT

15